UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.   22-14026-CR-CANNON/MAYNARD

UNITED STATES OF AMERICA

v.

ARTAVIS SPIVEY,

          **Defendant.**
_____/

**UNITED STATES' SENTENCING MEMORANDUM**

Comes now the United States of America, by and through the undersigned Assistant United States Attorney, and hereby submits its Sentencing Memorandum in the above-referenced case.

**BACKGROUND**

On May 5, 2022, a federal grand jury in the Southern District of Florida returned an Indictment charging Artavis Spivey ("Spivey") and Daniel Zamot ("Zamot") with carjacking, in violation of 18 U.S.C. §§ 2119(1) and 2 (Count One), and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(ii) and 2 (Count Two), and Spivey with possession of a firearm as a convicted felon, in violation of Title 18, United States Code, Section 922(g)(1) (Count Three).   (Doc. No. 12.)

On August 26, 2022, Spivey pleaded guilty to Counts One and Two of the Indictment pursuant to a written plea agreement with the United States.   (Doc. Nos. 57, 59-60.)[1]   As part of the plea agreement, the United States agreed to recommend at sentencing that the Court reduce Spivey's offense level by two levels pursuant to Section 3E1.1(a) of the Sentencing Guidelines.

---

[1] Zamot also pled guilty to Counts One and Two of the Indictment.   (Doc. Nos. 33-35.)

1

(Doc. No. 60.)[2]   The United States also agreed to recommend that the Court impose a sentence within Spivey's advisory sentencing guideline range as calculated by the Court at sentencing. (Doc. No. 60.)

Spivey's sentencing hearing is scheduled for November 17, 2022.  According to the Presentence Investigation Report ("PSI"), Spivey has a Total Offense Level of 26 and criminal history category of IV, which yields an advisory sentencing guideline range of 176 – 199 months' imprisonment.  (PSI at ¶¶ 37, 55, 92.)[3]   Spivey's Total Offense Level includes a two-level enhancement under U.S.S.G. § 3C1.2 for reckless endangerment during flight, and two-level enhancement under U.S.S.G. § 3C1.1 for obstruction of justice.  (PSI at ¶¶ 22-24, 32-33.)   Spivey is subject to a mandatory minimum sentence of 84 months' imprisonment and statutory maximum of life imprisonment as to Count Two of the Indictment, which must be imposed consecutively to the sentence imposed on Count One of the Indictment.   (PSI at ¶¶ 92-93.)

The United States respectfully submits a total sentence of 180 months' imprisonment is sufficient, but not greater than necessary, to reflect the nature and circumstances and seriousness of the offense, the history and characteristics of the defendant, the need to promote respect for the law, provide just punishment, afford adequate specific and general deterrence, and protect the public from further crimes of the defendant.

---

[2] The United States does not intend to grant Spivey a third point for acceptance of responsibility under U.S.S.G. § 3E1.1(b).

[3] Spivey's guideline range on Count One of the Indictment is 77 – 96 months if the Court grants a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a), and 92 – 115 months if the Court declines to grant such a reduction.  (PSI at ¶¶ 93-94.)

## ANALYSIS

### *Nature and Circumstances and Seriousness of the Offense*

On February 17, 2022, at approximately 12:37 p.m., law enforcement received a 911 call advising that an armed carjacking had just taken place at Highlands Advanced Rheumatology and Arthritis Center ("Highlands Rheumatology") in Avon Park, Florida.  (PSI at ¶ 8.)

Shortly thereafter, law enforcement interviewed the victim of the carjacking, "J.S."  J.S. advised that she was sitting inside her 2018 Lincoln MKC, located in the parking lot of Highlands Rheumatology, when a man armed with a black 9mm semi-automatic handgun approached her and demanded the keys to her vehicle.  J.S. was sitting in the driver's seat of the vehicle with the door open.  J.S. advised that she complied and gave the man her keys, after which he demanded her cellphone, which she also gave him.  J.S. explained that the man then ordered her to exit and walk around to the back of the vehicle or he would shoot her.  J.S. described the man as a black male with a slender build and stated that he was wearing sweat pants, a red or orange hooded jacket, and a facemask with holes for his eyes and mouth.  J.S. stated that a second man, whom she described as a heavier set black male, was standing at the rear of her vehicle when she was robbed.  J.S. stated the second man was also wearing sweatpants, a red or orange hooded jacket, and a facemask with holes for his eyes and mouth.  J.S. advised that the two men fled the scene in her vehicle.  (PSI at ¶ 9.)

Law enforcement was able to track J.S.'s 2018 Lincoln MKC through the use of Ford Pass, a smartphone application that allows its users to access the GPS coordinates for their vehicles.  At approximately 2:41 p.m., the Ford Pass application indicated J.S.'s 2018 Lincoln MKC was traveling south on SR 31 N in Lee County, Florida.  (PSI at ¶ 10.)

3

At approximately 3:00 p.m., law enforcement located the 2018 Lincoln MKC and attempted to conduct a traffic stop in Fort Myers, Florida. A vehicle pursuit ensued, during which Spivey drove through several yards and almost crashed into another vehicle. Spivey crashed into a patch of bushes after law enforcement conducted a Pursuit Intervention Technique ("PIT") maneuver. Shortly thereafter, Spivey exited the vehicle from the front driver's side and Zamot exited the vehicle from the front passenger's side. Both Spivey and Zamot fled on foot and were apprehended a short time later. Spivey was wearing a red hooded jacket when he was arrested. (PSI at ¶ 11.)

Law enforcement interviewed Zamot at the Lee County Sheriff's Office the same day he was arrested. Zamot admitted, among other things, that he was present with Spivey when Spivey stole J.S.'s 2018 Lincoln MKC. Zamot acknowledged that he knew Spivey had a firearm on his person when he and Spivey approached the 2018 Lincoln MKC. Zamot also said that Spivey told him he "was going to go get that car" before they approached the 2018 Lincoln MKC. (PSI at ¶ 12.)

While searching the 2018 Lincoln MKC, law enforcement recovered, among other things, two ski masks from behind the front passenger's seat and a loaded black H&K 9mm semi-automatic firearm with an extended magazine between the driver's seat and center console. The H&K 9mm semi-automatic firearm was reported stolen out of Polk County. (PSI at ¶ 13.) Spivey ultimately admitted that he brandished the H&K 9mm semi-automatic firearm when he and Zamot stole J.S.'s 2018 Lincoln MKC.

A loaded Cobra, .380 caliber semi-automatic firearm was found in the bushes where Zamot exited the vehicle. The Cobra, .380 caliber semi-automatic firearm was reported stolen out of Osceola County. (PSI at ¶ 14.)

Law enforcement obtained Ring door camera footage from several nearby residences. One of the cameras depicts Spivey and Zamot walking up to J.S.'s vehicle together. Specifically, the video depicts two males with red hooded jackets approaching J.S.'s vehicle and walking up to the driver's side door of the vehicle, with one of the males standing directly behind the other. The video also depicts J.S. running from the vehicle shortly after Spivey and Zamot approached her. (PSI at ¶ 15.)

Law enforcement also obtained an emergency Ping Order for J.S.'s cellphone, which Spivey stole during the carjacking. Law enforcement located J.S.'s cellphone on the side of US 27 in Avon Park. J.S.'s cellphone was processed for latent prints by a crime scene analyst and fingerprint expert, who later identified a latent print that was lifted from J.S.'s cellphone as Spivey's left little finger. (PSI at ¶ 17.)

It is difficult to envision a more terrifying encounter than having a masked man brandish a loaded firearm and threaten to shoot another person while stealing her car. Spivey's conduct was egregious, serious, and significant, and demonstrates a blatant disregard for the safety of others. Spivey needlessly and callously put J.S's. life in mortal peril.

Unfortunately, Spivey's crime spree did not end with the carjacking. A few hours after the carjacking, Spivey led law enforcement on a vehicle pursuit, during which he drove through several yards and almost crashed into another vehicle. Spivey crashed the vehicle he and Zamot stole from J.S. into a patch of bushes after law enforcement conducted a PIT maneuver.

Several months later, Spivey threatened Zamot and Zamot's family while they were both housed at the Saint Lucie County Jail. Specifically, Spivey told Zamot he would hurt him and his

family unless Zamot wrote a letter to the Court exonerating him.   (PSI at ¶¶ 22-23.)[4]   A copy of the letter Spivey directed Zamot to write is attached as Exhibit "A."

The nature and circumstances and seriousness of the offense justify a sentence of 180 months' imprisonment.

### *History and Characteristics of the Defendant*

Spivey's criminal history also merits attention as it reveals a complete disregard for the law and lack of respect for authority.   Spivey, who is only 21 years old, has already amassed no less than five felony convictions, including burglary (2019), theft of a firearm (2019), burglary (2019), theft of a motor vehicle (2019), and burglary (2019).   (PSI at ¶¶ 49-50, 52.)   Spivey was on probation for two of the burglary convictions and both theft convictions when he committed the armed carjacking charged in the Indictment.   (PSI at ¶¶ 49-50.)   Spivey also has several pending felony charges in Polk County for battery of a detainee.   (PSI at ¶¶ 60-62.)[5]   Prior to his felony convictions, Spivey had a long history of committing crimes as a juvenile, including a battery and four separate residential burglaries.   (PSI at ¶¶ 38-39, 41, 43-44.)   Spivey has spent every year of his adult life in jail or prison.   To say that Spivey has pursued a life of crime would be an understatement.

The United States does not dispute that Spivey suffers from drug addiction and mental health issues.   As this Court is well aware, drug addiction is unfortunately the rule, not the exception, for federal defendants.   While Spivey's voluntary drug abuse may have led to poor

---

[4]  The encounter between Zamot and Spivey at the Saint Lucie County Jail took place shortly after undersigned counsel advised counsel for Spivey that Zamot was cooperating with the United States and would testify against Spivey if Spivey proceeded to trial.

[5]  Spivey allegedly struck other inmates on various occasions while incarcerated at the Polk County Jail.   (PSI at ¶¶ 60-62.)

decision making, it in no way excuses his conduct. The Bureau of Prisons is well equipped to deal with drug addiction and mental health issues through various treatment programs, and the United States submits the defendant should avail himself of those opportunities.

*** The Need for the Sentence to Promote Respect for the Law, Provide Just Punishment for the Offense, Afford Adequate Specific and General Deterrence, and Protect the Public from Further Crimes of the Defendant ***

Spivey's criminal history evinces an alarming level of recidivism and strongly suggests he will continue to violate the law when not incarcerated. Spivey was released from prison on his most recent felony convictions on January 30, 2022 – *he committed an armed carjacking eighteen days later on February 17, 2022*. (PSI at ¶¶ 49-50.) To be clear, Spivey committed the offenses charged in the Indictment eighteen days after he was released from prison following a 48-month sentence. Spivey has simply failed to demonstrate any ability to live amongst society crime free. Spivey's prior periods of incarceration clearly were not sufficient enough to impress upon him the need to obey the law and conform his conduct to the requirements of society. The longest sentence Spivey has received to date is 48 months. (PSI at ¶¶ 49-52.) The fact Spivey has not served a sentence as long as the one he now faces may well be the reason he continues to violate the law. Spivey's repeated flouting of the law suggests that recidivism is still an active concern and underscores the need to protect the public from further crimes that he may commit.

A significant sentence is necessary to promote respect for the law, provide just punishment for the offense, afford adequate specific and general deterrence, and protect the public from further crimes of the defendant.

*** Parity in Sentencing ***

Finally, Spivey should expect to be treated like other similarly situated defendants. Parity in sentencing among similarly situated federal defendants across the country is fundamental to the

proper administration of justice. This principle is embodied in Section 3553(a)(6), which "is concerned with national disparities among the many defendants with similar backgrounds convicted of similar criminal conduct." *United States v. Simmons*, 501 F.3d 620, 623 (6th Cir. 2007). Generally, "national uniformity is . . . taken into account by the Sentencing Guidelines, which are almost certainly the best indication of ordinary practice since most sentences are within the guidelines." *Id*. at 626 (internal marks and citation omitted). Indeed, "[e]ven after *Booker* rendered the Sentencing Guidelines advisory, district courts have *in the vast majority of cases* imposed either within-Guidelines sentences or sentences that depart downward from the Guidelines on the Government's motion." *Hughes v. United States*, 138 S.Ct. 1765, 1777 (2018) (internal marks and citation omitted; emphasis added).

A total sentence of 180 months' imprisonment adequately reflects the relevant 3553(a) factors, preserves the integrity of the Sentencing Guidelines, and promotes national uniformity.

## CONCLUSION

Based on the foregoing, the United States respectfully requests the Court to sentence the defendant to 180 months' imprisonment.

Respectfully submitted,

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY

By:   **/s/Michael D. Porter**
Michael D. Porter
Assistant United States Attorney
Florida Bar# 0031149
101 South U.S. Highway 1
Suite 3100
Fort Pierce, Florida 34950
Telephone: (772) 293-0950
Email:michael.porter2@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on November 3, 2022, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by either regular U.S. mail or inter-office delivery.

/s/**Michael D. Porter**
Michael D. Porter
Assistant United States Attorney